UNITED STATES of America, Appellee,

v.

Charles S. RONDER, Appellant.

No. 307, Docket 80–1196.

United States Court of Appeals,
Second Circuit.

Argued Oct. 20, 1980.

Decided Feb. 2, 1981.

David G. Trager, New York City (Stanley A. Teitler, Richard H. Levenson, Zane and Teitler, New York City, on brief), for appellant.

Martin Flumenbaum, Asst. U. S. Atty., New York City (George H. Lowe, U. S. Atty., Albany, N. Y., John S. Martin, Jr., U. S. Atty., Gregory L. Diskant, Asst. U. S. Atty., New York City, on brief), for appellee.

Before FRIENDLY, TIMBERS, and NEWMAN, Circuit Judges.

NEWMAN, Circuit Judge:

The primary issue on this appeal concerns the procedure for handling inquiries from a jury during deliberations. Charles S. Ronder appeals from a judgment of the District Court for the Northern District of New York (James T. Foley, Judge) convicting him after a jury trial of conspiracy to make and file false corporate income tax returns for the years 1971–1973, in violation of 18 U.S.C. § 371 (1976), and of the substantive offense of aiding and assisting in the filing of a false corporate income tax return for the year 1973, in violation of 26 U.S.C. § 7206(2) (1976). Appellant's claim is that the District Judge failed to afford defense counsel a timely opportunity to see and suggest responses to inquiries submitted by the jury during deliberations. Because we agree that the procedure followed was erroneous and because we are unable to conclude that the error may not have contributed to the jury's verdict, we reverse the conviction and remand for a new trial.

Assessment of appellant's claim requires some consideration of the factual issues facing the jury. Ronder is a certified public accountant and a lawyer. The Government's evidence tended to prove that he knowingly participated in a scheme to reduce the tax liability of one of his corporate

clients, Ulster Electric Supply Co. (Ulster). The scheme was originated by Gerald Gruberg, Ulster's President.[1] It involved the addition of false amounts to Ulster's purchases in order to reduce profits and consequent tax liabilities.

Three witnesses testified to Ronder's knowing complicity in the scheme. Gruberg testified that he told Ronder that the purchase figures were to be falsely inflated. Gruberg also said that in each of the three years of the scheme Ronder calculated the amount of false purchases necessary to reduce Ulster's tax liability to the level specified by Gruberg. Ulster's bookkeeper testified that Ronder discussed aspects of the scheme with her, instructing her how to enter the false items. A third witness was an attorney in a law firm to which Gruberg turned for advice after the Internal Revenue Service began its inquiry. The attorney testified that Ronder admitted having knowledge of the scheme during its existence. Ronder signed the 1973 return as the preparer.

The defense disputed Ronder's complicity in three ways. Ronder denied any participation in the scheme or in the incriminating conversations alleged by prosecution witnesses. A witness who was present at some of the meetings in which Gruberg and Ronder were alleged to have discussed execution of the scheme denied that the conversations implicating Ronder had occurred. Finally, the defense suggested that each of the three prosecution witnesses had motives to implicate Ronder in order to curry favor with the prosecution. Gruberg had been permitted to plead guilty to a single count; the bookkeeper had been granted immunity; and the new lawyer for Ulster, according to Ronder, was motivated to accuse Ronder in order to deflect Government attention from his firm's role in the preparation of Ulster's 1974 return, which Ronder alleges was a false return.

With the evidence thus sharply disputed, the jury experienced considerable difficulty in reaching a verdict. The jury received the case for deliberation at 11 a. m. At 1:30 p. m. the jury requested a rereading of the charge concerning the credibility of the Government's witnesses. At 4:15 p. m. the jury sent a note indicating a possible deadlock:

Judge Foley, We have debated and there are several of us that refuse to believe the most important evidence is truthful. Further discussions seem fruitless. What is your advice?

After reading the note to counsel and engaging in a brief colloquy with them, Judge Foley told the jury to recess for the evening and return the next day. He also gave some mild instructions concerning the desirability of reaching a verdict.

On the third and final day of deliberations there occurred the episodes giving rise to this appeal. At 1:45 p. m. the jury sent a note firmly reporting a deadlock: "We cannot reach a verdict on either charge." The trial judge did not disclose the note to counsel before responding nor elicit their views as to an appropriate response. He recalled the jury to the courtroom and gave them a modified *Allen*[2] charge. Though endeavoring to give a balanced charge and avoid coercion, the judge chose language that may not have successfully achieved his objectives. First, he dealt with each side's interest in avoiding a deadlock:

It is important to the government to have a verdict because the government is anxious to see the law enforced.

It is important to this defendant, Mr. Ronder on trial. He has gone through a long trial, and it is an ordeal in some respects, as you know. He is entitled to have the verdict. So you have that situation.

These words, as defense counsel observed after hearing them, might have given the jury the impression that the Government's

---

1. Prior to Ronder's trial, Gruberg pled guilty to Count 2 of the indictment, charging him with the substantive offense of filing a false corporate income tax return for the year 1973.

2. *Allen v. United States*, 164 U.S. 492, 501–02, 17 S.Ct. 154, 157–58, 41 L.Ed. 528 (1896).

interest in a verdict was more meritorious that the purely personal concerns of the defendant. The Government's interest in having the law enforced would more appropriately have been balanced by mention of the defendant's interest in being exonerated if he is innocent. Second, the trial judge eschewed the familiar and approved cautions, variously expressed,[3] that no juror should abandon a conscientiously held view of the evidence simply to enable a verdict to be returned. Instead, the judge made the somewhat less forceful statement, "You have a right, as I told you, to stand on your own independent conviction."

Later the same afternoon, while the jury was continuing to deliberate, the trial judge met with counsel in chambers to hear defense counsel's motion for a mistrial because of the previously reported jury deadlock. Prior to this conference the judge had received a second note from the jury. Disclosing the existence of this note, the judge told counsel that "it says that they have made some progress" and that "there is one juror who refuses to discuss the issues." However, he declined to read the text of the note when specifically asked to do so by Government counsel. The note read as follows:

Judge Foley, We have made progress yet there is *one* juror who refuses to discuss the issues. That person complains of a headache. Could you talk to us and explain again what our duties are in the jury room, that it is important to open our minds. That one person feels that he or she is being badgered because we ask for evidence on their position to discuss. [Emphasis in original].

Judge Foley denied the defendant's motion for a mistrial, whereupon the prosecutor asked the judge to give an *Allen* charge. Court was then reconvened and the jury recalled.

In addressing the jury on this occasion, Judge Foley mentioned the existence of a third note, apparently received by him shortly after the report of the jury's progress. The third note read as follows:

Is it possible to bring a verdict of guilty to charge 1 [the conspiracy offense] and not guilty to charge 3 [the substantive offense]? Some of us feel that the two charges are tied together and that the same verdict has to be reached for both. Maybe if you would redefine both charges for us and explain how much involvement constitutes guilt.

Counsel did not know of the content or even of the existence of this third note.

Dealing with the note he had mentioned to counsel, Judge Foley gave a carefully worded *Allen* charge. The prior reference to the Government's interest in enforcing the law was omitted, and each juror was told not to "surrender an honest conviction solely because of the opinion of a fellow juror, or for the mere purpose of reaching a verdict." Turning next to the inquiry in the third note, Judge Foley responded by pointing out that the two charges against Ronder were "separate" and by reviewing the elements of both the conspiracy and the substantive offenses. He gave special attention to the element of the substantive offense that required falsity as to at least one material matter, suggesting to the jurors that this element "is the one that you may have had some difficulty about."

After the jury retired to resume deliberations, defense counsel urged a fuller explanation of the terms "willfully" and "knowingly," which he asserted was "really the

---

**3.** *E. g.*, a juror "should never surrender your honest conviction as to the weight or effect of evidence solely because of the opinion of other jurors or for the mere purpose of returning a verdict," *United States v. Barash*, 412 F.2d 26, 31 n.9 (2d Cir.), *cert. denied*, 396 U.S. 832, 90 S.Ct. 86, 24 L.Ed.2d 82 (1969); no juror should violate "a conviction which he conscientiously holds predicated upon the weight and effect of the evidence," *United States v. Miller*, 478 F.2d 1315, 1320 (2d Cir.), *cert. denied*, 414 U.S. 851, 94 S.Ct. 144, 38 L.Ed.2d 100 (1973); jurors should vote "finally according to your conscientious judgment," *United States v. Hynes*, 424 F.2d 754, 756 n.2 (2d Cir.), *cert. denied*, 399 U.S. 933, 90 S.Ct. 2270, 26 L.Ed.2d 804 (1970); jurors should try to reach unanimity "without any juror yielding a conscientious conviction," *United States v. Rao*, 394 F.2d 354, 355 (2d Cir.), *cert. denied*, 393 U.S. 845, 89 S.Ct. 129, 21 L.Ed.2d 116 (1968).

issue." Judge Foley declined further elaboration and at that point afforded counsel their first opportunity to inspect the second and third notes. After reading the notes, neither counsel requested further instructions. Approximately one-half hour later, the jury returned verdicts of guilty on both counts.

■ It is settled law that messages from a jury should be disclosed to counsel and that counsel should be afforded an opportunity to be heard before the trial judge responds. *Rogers v. United States*, 422 U.S. 35, 39, 95 S.Ct. 2091, 2094, 45 L.Ed.2d 1 (1975); *United States v. Robinson*, 560 F.2d 507, 516 (2d Cir. 1977) *(en banc), cert. denied*, 435 U.S. 905, 98 S.Ct. 1451, 55 L.Ed.2d 496 (1978). *See United States v. Glick*, 463 F.2d 491 (2d Cir. 1972); *United States v. Schor*, 418 F.2d 26 (2d Cir. 1969).

■ The proper practice should include these steps. (1) The jury's inquiry should be submitted in writing. This is the surest way of affording the court and counsel an appropriate opportunity to confer about a response. (2) Before the jury is recalled, the note should be marked as a court exhibit and be read into the record in the presence of counsel and the defendant. This avoids any later claim by the defendant that he remained unaware of the note's content, despite his counsel's knowledge of it. (3) Counsel should be afforded an opportunity to suggest appropriate responses. During this colloquy, it is also helpful for the judge to inform counsel of the substance of his proposed response, or even to furnish a written text of it, if available. *Cf.* Fed.R.Crim.P. 30, requiring the trial judge to inform counsel of the disposition of proposed requests to charge prior to summations. (4) After the jury is recalled, the trial judge should generally precede his response by reading into the record in their presence the content of any note concerning substantive inquiries. This assures that all jurors appreciate the question to which the response is directed, in the event the note was not discussed among all the jurors. It also provides an opportunity to correct any failure by the foreman to convey accurately the inquiry of one or more of the jurors, in the event the foreman has undertaken to author all substantive notes. On occasion the personal nature of a note or the risk of exacerbating tensions among jurors may make it appropriate to forgo reading the text of the note to the entire jury; in that event it may be appropriate to disclose the note to counsel *in camera* or even to make some redaction. *See United States v. Robinson, supra*, 560 F.2d at 516–17 (juror's name). Recalling the jury may be unnecessary when the inquiry concerns routine housekeeping details. Of course, the emergency nature of a communication may require even more expeditious handling.

■ In this case, it is undisputed that none of the three notes submitted by the jury on the third and final day of deliberations was disclosed to counsel before the trial judge responded. Appellant challenges both this procedural error and the substantive content of the supplemental instructions, contending that the instructions were coercive and insufficient to respond to the jury's inquiries. The Government contends that the responses were substantively adequate and that the procedural error was not prejudicial because defense counsel suggested no additional or corrective instructions after seeing the content of the notes.

Though the issue is close, we are persuaded that, in the circumstances of this case, the procedural error requires a new trial. The crucial evidence against the accused was sharply disputed, and, more significantly, the jury was experiencing considerable difficulty in resolving the dispute, twice reporting a deadlock. In such circumstances the wording of the trial judge's responses to the jury's inquiries assumed even added significance to that normally attending this critical stage of a criminal trial. *See Bollenbach v. United States*, 326 U.S. 607, 612–13, 66 S.Ct. 402, 405, 90 L.Ed. 350 (1946). Had the first note been discussed with counsel, the phrases in the response concerning the Government's view of the importance of the case might well have been avoided, and the traditional cautionary language concerning not abandon-

ing a conscientiously held view merely to return a verdict might well have been included. Disclosure of the second note might well have prompted counsel to suggest a response appropriately tailored to the circumstances of the juror who felt badgered, and surely would have permitted more focused argument in support of the motion for a mistrial. Disclosure of the third note would have afforded counsel an opportunity to suggest a specific response to the jury's significant request for an explanation of "how much involvement constitutes guilt." While we do not decide that the judge's review of the elements of the two offenses was an erroneous response to the inquiry, his emphasis on materiality, which was not disputed, and the lack of specific discussion of participation, which was a significant point of the inquiry, resulted in a supplemental instruction less favorable to the accused than would probably have resulted if counsel had been consulted.

We do not think the procedural error can be ignored because of defense counsel's failure to suggest further instructions after seeing the contents of the notes. In the first place, counsel may reasonably have thought it unlikely that a jury in the midst of deliberations would be recalled simply to accommodate his preference for particular wording of a supplemental instruction.[4] Yet at this critical stage of the trial the wording may be as significant as the substance of the response. Moreover, defense counsel did note his objection to the wording of the first modified *Allen* charge, and, following the judge's response to the third note, did begin to complain about that instruction as well. At that point the judge made reasonably clear that the supplemental instructions were not going to be revised.

In sum, we cannot say "with fair assurance," *United States v. Schor, supra,* 418

F.2d at 30, that the procedural error in the handling of the jury's inquiries did not affect the verdict. Accordingly, we reverse and remand for a new trial.

---

4. The context differs from the circumstances at the conclusion of the initial charge to the jury, at which point counsel's obligation to object is clear. Fed.R.Crim.P. 30. At that point the jury has not yet begun deliberations, normally being told to await an indication that deliberations may begin. In some districts this is accomplished by sending to the jury room the indict- ment and the exhibits, only after exceptions to the charge have been considered and supplemental instructions given, if needed. Of course, even after supplemental instructions in response to a jury's inquiry, counsel is well advised to specify to the trial judge any objection while the opportunity to make a correction still exists.